THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MICHAEL EDWARDS, Defendant-Appellant.

Second District (2nd Division)    No. 75-259

Opinion filed December 14, 1976.

Ralph Ruebner and Peter B. Nolte, both of State Appellate Defender's Office, of Elgin, for appellant.

Jack Hoogasian, State's Attorney, of Waukegan (Martin P. Moltz and Phyllis J. Perko, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

Defendant appeals from the sentence of 4 to 12 years imposed upon him by the trial court on his robbery conviction, after his probation was revoked. The principal issue presented is whether the trial court abused its discretion in sentencing the defendant without invoking the provisions of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1973, ch. 91½, par. 120.1 *et seq.*).

Defendant and an accomplice were indicted on 2 counts of armed robbery and 1 count of robbery. (His codefendant pleaded guilty, was sentenced and is not involved in the instant case.) Bail was fixed at $5,000 which defendant posted. Hearing was scheduled for September 24, 1973, but defendant failed to appear and a forfeiture of the bond was ordered. Defendant was subsequently indicted for violation of bail bond. On

October 29, 1974, he entered a negotiated plea of guilty to the robbery count and to bail bond violation. At the hearing when the defendant explained to the court his participation in the robbery, the following was part of the colloquy between the court and the defendant:

"THE COURT: Had you been on or had you taken any drugs or anything before that happened?

THE WITNESS [Defendant]: No, I hadn't.

THE COURT: And you hadn't had anything to drink?

THE WITNESS [Defendant]: No."

The presentence investigation report which was presented at the sentencing hearing on November 21, 1974, included a report of the statement of this "twenty year old black youth [defendant]" that he began using drugs ("shooting 'speed'—amphetamines") at the age of 13, and that after 2 years he began using heroin periodically. The report concluded that defendant "would be a poor candidate for probation" and suggested either a "work release program or a live-in therapeutic community for young drug abusers, in Tinley Park Mental Health Center or Gateway House." The trial court sentenced defendant to a period of 3 years' probation with the first 10 months to be served in Lake County Jail under a work release program. This was in accordance with the terms of the plea bargain and was consistent with the suggestion in the probation officer's report.

On January 14, 1975, following a hearing on defendant's motion, the trial court ordered that defendant be allowed to leave the county jail on January 15, 16 and 17, for specified four-hour periods each day to seek employment. The defendant failed to return on Friday, January 17, and the State's Attorney filed a petition to revoke defendant's probation on that ground. The defendant was returned on January 24.

Testimony at the probation revocation hearing on January 31 disclosed that on January 17 one of the work release co-ordinators at the county jail received a telephone call from an individual who spoke "incoherently," but did identify himself by spelling defendant's name correctly. The Sheriff's patrolman who "picked up" defendant at the Evanston Police Department on January 23 testified that at that time defendant's speech was "slurred"; that the defendant had a "bit of a balance-type of problem" in walking; and that the defendant told him that he was "an addict" and "a sick man." The trial court found that defendant had violated his probation and proceeded to a hearing in aggravation and mitigation.

The defendant testified that after looking for employment on January 17 he "shot" some heroin, and during the next several days injected several "bags" of heroin, all given to him by others without payment; that

during the days of his absence he stayed either at his sister's home or at the home of a friend in Evanston; that on January 23 he had made some arrangements to enter a drug rehabilitation program in Chicago but when he arrived there after 10 p.m. it was closed. In response to the judge's question he testified that he "was under the influence of drugs" just before he had committed the robbery to which he pleaded guilty. Defendant's sister testified that she had made arrangements for him to enroll in a drug abuse clinic in Chicago. Rudolph Coleman, the adult probation officer assigned to this case, who was a former drug addict and who had prepared the presentence investigation report in November, 1974, testified that in his opinion defendant's dependence on drugs was more psychological than physiological, and that, if it were to be eliminated, defendant should be placed in a live-in therapeutic community for drug addicts.

Defendant's retained counsel urged the court at that hearing, especially in the light of the court's awareness of the "Robinson case" (obviously a reference to *People v. Robinson* (1973), 12 Ill. App. 3d 291), "which really went through all of the drug addiction problems," and urged that defendant be given "the structure and backing of some kind of community." The trial court, in reaching a decision recalled that when at the hearing in November, 1974, the court inquired whether the defendant had been on or taken any drugs before the robbery, the defendant answered that he "hadn't," while at the probation revocation hearing defendant testified that he was on drugs at that time. The trial court concluded that defendant "is a liar" and that "[n]owhere do we get any great comment about his need of drug rehabilitation until he is really in a spot"; and that "this young man doesn't want to be helped or at least he has not demonstrated to this court that he wants any help." The court concluded that the only way to deny defendant access to drugs, "since he can't do it voluntarily," is to incarcerate him where he can be "forced to undergo such treatment as the authorities may consider proper." The court accordingly sentenced defendant to an indeterminate term of 4 to 12 years in the penitentiary. This appeal followed.

Insofar as relevant here section 10 of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1973, ch. 91½, par. 120.10) grants discretion to the trial court, if it has reason to believe that an individual convicted of a crime is an addict or if he states that he is (and if the defendant is eligible under section 8)[1], to "advise him that he may be placed on probation if he elects to submit * * * and is accepted for treatment" by the Department of Mental Health. The defendant contends that because no specific

---

[1] The defendant was eligible even though convicted of the offense of robbery. See *People v. McCoy* (1976), 63 Ill. 2d 40.

reference was made to the Act by any of the parties or by the trial judge it does not appear that the requisite discretion was being exercised by the trial judge. The defendant is mistaken.

■■ Both the argument of defendant's retained counsel and her reference to the *Robinson* case at the combined hearing on the petition to revoke and the sentencing, and the trial court's remarks referred to above, make it clear that counsel and the trial court were all cognizant of the Act's provisions even though it was not specifically referred to. From all the evidence the trial court exercised its discretion by declining to offer the defendant the election of submission to treatment under section 10 of the Act because defendant had proven himself unable to "do it voluntarily." In view of the circumstances of this case we are unable to say that the trial court abused the discretion reposed in it by the Act. See *People v. Williams* (1972), 4 Ill. App. 3d 362.

■■ Finally, the defendant contends that the sentence imposed is excessive. The trial judge in the course of all of the proceedings before him and at the hearing in aggravation and mitigation had an opportunity to consider all of the relevant factors. The defendant and his accomplice in April, 1973, committed two separate robberies of members of the United States Navy in North Chicago. From one of the sailors a wallet containing $50 was taken, after defendant held a knife at the victim's back, and from the other $100 was taken. The defendant also committed the crime of bail jumping on September 24, 1973, and was not arrested until April, 1974. To both of these he pleaded guilty. These are serious offenses.

The sentence imposed was within the statutorily prescribed limits. The trial court is normally in a better position than a reviewing court to make a sound determination as to the punishment to be imposed. (*People v. Taylor* (1965), 33 Ill. 2d 417, 424.) We are unable to say that the sentence imposed was at variance with the spirit of the law or is improper.

The judgment of the circuit court of Lake County is therefore affirmed.

Judgment affirmed.

SEIDENFELD and GUILD, JJ., concur.